594 P.2d 97

John SCALES et al., Petitioners,

v.

CITY COURT OF the CITY OF MESA, State of Arizona, Honorable Harold Reeb, Honorable D. H. Standage and Honorable Rufus Coulter, Judge of Maricopa County Superior Court, Real Parties in Interest, Respondents.

No. 14223.

Supreme Court of Arizona,
In Banc.

April 18, 1979.

Ronald E. Wiltbank by Brent E. Corwin, Mesa, for petitioners.

J. Lamar Shelley, City Atty., by Lowell Hamilton, City Prosecutor, Mesa, for respondents.

Frederick S. Dean, City Atty., by R. William Call, Asst. City Atty., Tucson, for amicus curiae City of Tucson.

HOLOHAN, Justice.

This is a special action brought by one hundred three defendants who have pending charges of driving while intoxicated under A.R.S. § 28–692 *et seq.* The respondents are the City of Mesa, Hon. Harold Reeb, and Hon. D. H. Standage, both magistrates in Mesa, and Hon. Rufus Coulter, Judge of the Superior Court of Maricopa County. This court has jurisdiction under A.R.S.Const. art. 6 § 5(4) and 17A A.R.S., Special Actions, Rules of Proc., rules 3(b) and (c).

Each petitioner was arrested for driving while intoxicated and given a breath test by means of a Breathalyzer. Each was thereafter charged with driving while intoxicated. Soon after arraignment each petitioner moved for production of the ampoules used in the test. The city responded that the ampoules had been discarded in accordance with the standard procedure recommended by the Breathalyzer manufacturer. Petitioners then moved to suppress the results of the Breathalyzer test and to dismiss the action. The trial court denied both motions and petitioners then filed a special action in the superior court; the superior court dismissed the special action and petitioners filed the present action.

The record in this case is extensive as the parties have stipulated to the admission of transcripts from similar hearings conducted in Phoenix city court, Tempe city court, and

Tucson city court, as well as the expert testimony given in the present case.

The questions presented in this special action are (1) whether due process principles as set out in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) require police officers to preserve Breathalyzer ampoules so that subjects of the test may later inspect them, and (2), if preservation is required, in what manner should police be required to preserve the ampoules.

In the states where these questions have been presented, the courts are split.[1]

The Breathalyzer is a machine designed to measure the percent of alcohol content in the blood. This is accomplished by taking a sample of the subject's breath, measuring the percent of alcohol content therein; then using a standard scientifically recognized ratio the breath-alcohol content is converted to blood-alcohol content.

To conduct the test the subject blows into a tube attached to the machine. The machine traps the last 52½ cubic centimeters of air blown into it and forces that trapped sample through a test ampoule containing a solution of sulphuric acid, potassium dichromate and silver nitrate. As the breath passes through the ampoule any alcohol contained in the breath reacts with the chemicals in the ampoule causing them to change color. The machine then causes a light to pass through the test ampoule and through a reference ampoule with the same chemical solution but through which no breath has passed. By measuring the difference in color between the test ampoule and the standard ampoule the machine then arrives at a determination of the level of the subject's blood-alcohol content.

Petitioners' first claim is that the fourteenth amendment due process clause, U.S.Const. Amend. XIV, as interpreted in *Brady v. Maryland, supra,* requires that police officers retain the test ampoule[2] so that it may be inspected by petitioners.

The respondents point out that a similar claim as that made by petitioners has been considered and rejected in *State v. Superior Court,* 107 Ariz. 332, 487 P.2d 399 (1971), and *State v. Cantu,* 116 Ariz. 356, 569 P.2d 298 (App.1977). Petitioners note that each of the cited cases held that the defendants had failed to show how a test of the used ampoule, had it not been discarded, could have made a valid contribution to the defense of the charge. Petitioners maintain that they have shown by the evidence in the record that an examination of the ampoule can provide information which could be very important to the defense of the charge. The record indicates that it is possible to determine several items of information from a physical examination of the ampoule: (1) the volume of the solution in the ampoule can be measured; (2) the sulphuric acid content can be measured; (3) nitric acid content can be determined; (4) the thickness of the glass wall of the ampoule can be measured; (5) any imperfections in the glass can be detected; (6) the existence of any foreign substance either on the outside or the inside of the ampoule can be determined.

The evidence presented shows that if the volume in the ampoule is less than three milliliters the test result will be elevated. Each ampoule must contain an exact

---

1. For those states requiring retention of the test ampoule, *see*:

   *People v. Hitch,* 12 Cal.3d 641, 117 Cal.Rptr. 9, 527 P.2d 361 (1974); *Lauderdale v. State,* 548 P.2d 376 (Alaska 1976); *State v. Michener,* 25 Or.App. 523, 550 P.2d 449 (1976). *Contra,* *State v. Teare,* 135 N.J.Super. 19, 342 A.2d 556 (1975); *State v. Shutt,* 116 N.H. 495, 363 A.2d 406 (1976); *Edwards v. State,* 544 P.2d 60 (Okl. Crim.1975); *State v. Watson,* 48 Ohio App.2d 110, 355 N.E.2d 883 (1975); *People v. Stark,* 73 Mich.App. 332, 251 N.W.2d 574 (1977).

   Colorado has recently ruled that police must preserve an actual sample of the defendant's breath and provide the defendant with such sample. *See Garcia v. Dist. Court,* 589 P.2d 924 (Colo.1979).

2. In the petition filed in this court the petitioners alleged that their defense was prejudiced by the destruction of the test ampoule. There was no allegation or discussion in the pleadings or argument concerning the value of the preservation of the reference ampoule. We have, therefore, limited our consideration to the question of the effect of the destruction of the test ampoule.

amount of potassium dichromate and a variance in this amount can render the test invalid. Any imperfections in the glass or foreign substance on the glass could cause diffusion of the light passing through the ampoule and could cause an incorrect test reading. This is especially true when a test ampoule is moved after being balanced with the reference ampoule. Any foreign substance composed of hydrocarbons inside the test ampoule would react with the chemicals within and produce a reaction similar to their reaction with alcohol. This could cause the results to be incorrect.

We believe that petitioners have made a sufficient showing of the materiality of the items that they wished produced. *Brady v. Maryland, supra,* held that a defendant is denied due process when evidence favorable to his defense is suppressed by the prosecutor. In the case at issue the objects demanded by the defense have been destroyed. We have held that where material evidence has been lost or destroyed we will reverse a conviction if (1) bad faith or connivance on the part of the state can be shown or (2) the defendant is prejudiced by the loss or destruction of said evidence. *State ex rel. Hyder v. Hughes,* 119 Ariz. 261, 580 P.2d 722 (1978); *State v. Hannah,* 120 Ariz. 1, 583 P.2d 888 (1978).

At the outset we reject any inference or suggestion that the prosecution acted in bad faith or with any evil motive. The usual and customary procedure was followed in these cases. The procedure was to all appearances approved by previous decisions of this court and the Court of Appeals. *See State v. Superior Court, supra; State v. Cantu, supra.* The question narrows to the second point—was the defendant prejudiced by the loss of the evidence.

In the cases at issue the result of the Breathalyzer test provides the prosecution with a statutory presumption of intoxication if the test reading is 0.10 percent or more by weight of alcohol in the defendant's blood. A.R.S. § 28–692(B)(3). This statutory presumption provides overwhelming proof on the material issue of intoxication. Destruction of the ampoule deprives the defendant of a crucial source of evidence with which to attack the validity of the test reading and hence the presumption. In light of the obvious importance to the petitioners of being able to rebut the presumption of intoxication we hold that destruction of the ampoule was prejudicial to the defense.

Having decided that *Brady v. Maryland, supra,* requires retention of the Breathalyzer ampoule we must now decide in what manner they should be retained and preserved.

Petitioners argue that after completion of the test the police should not only be required to preserve each test ampoule, but should also be required to place each ampoule in a medicinal vial and store it in the freezing compartment of a standard refrigerator. They reason that by freezing the vial the ongoing chemical reaction between the alcohol and the chemicals within the ampoule will be slowed. Petitioners argue that the freezing procedure will allow them to conduct an independent retest of the ampoule in order to ascertain whether the original test reading was reasonable. Their theory is based primarily on the scientific expert testimony of Linda Edwards, an instructor in criminology at Phoenix College. Edwards testified that she had conducted experiments which proved petitioners' contention. Respondents offered several experts who differed with Ms. Edwards' theories. They doubted that freezing in the manner Edwards proposed would slow the reactions within the ampoule enough to assure the test results would be valid. They said that freezing the ampoule to near absolute zero with liquid nitrogen might accomplish sufficient slowing of the chemical reaction but that the process would be expensive and hazardous to the police officers.

To be accepted by a court as fact, a scientific principle must have gained general acceptance in the particular field in which it belongs. *See Frye v. United States,* 293 F.2d 1013 (D.C.Cir. 1923); *State v. Valdez,* 91 Ariz. 274, 371 P.2d 894 (1962). At present there is not sufficient showing that the scientific community has

generally accepted the freezing procedure proposed by Ms. Edwards.

Based on the record we find that petitioners have failed to make a sufficient showing that requiring officers to freeze the test ampoules would aid them in the presentation of their defense. We therefore decline to hold that there is any requirement that police preserve the test ampoules in a frozen condition. The requirements of due process are satisfied if the police retain possession of the ampoules after the test so that the ampoules may be available for examination by the defense. The police departments may destroy the ampoules after giving the notice and following the procedure required by 17 A.R.S., Rules of Criminal Procedure, rule 28.2(e).

■ The destruction of the Breathalyzer ampoules having violated petitioners' right to due process under *Brady v. Maryland, supra,* the ruling of the Mesa city court denying the motion to suppress was error. The results of the breath test as to each petitioner are ordered suppressed. We do not find it necessary to grant petitioners' request that the cases against each be dismissed. The evidence which was destroyed applies only to the Breathalyzer test. The suppression of the test result is an adequate remedy. The cases may still be tried without use of the Breathalyzer test. The element of intoxication may be established by use of other evidence. *See* A.R.S. § 28–692 (B)(4).

The ruling which we make today is not retroactive to those cases which have become final prior to this decision.

The rulings of the superior court and the Mesa city court denying suppression of the Breathalyzer tests are set aside. The cases are remanded to the Mesa city court with directions to suppress the Breathalyzer test results and to proceed with the trial of these causes.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and GORDON, JJ., concurring.